Emzy T. BARKER, III and Ava Barker
d/b/a Brushy Creek Brahman Center
and Brushy Creek Custom Sires, Peti-
tioners,

v.

Walter W. ECKMAN, Individually and
as Nominee and Trustee, Eckman,
Inc., and Larry Eckman, Respondents.

No. 04–194.

Supreme Court of Texas.

Argued Nov. 17, 2005.

Decided Dec. 1, 2006.

Rehearing Denied Feb. 23, 2007.

Richard P. Hogan Jr., Jennifer Bruch Hogan, Pillsbury Winthrop Shaw Pittman, L.L.P., J. Brett Busby, Mayer, Brown, Rowe, & Maw LLP, Houston, Richard N. Evans II, Beaumont, Mark Owen, Owen Bogart and Rogers, Elgin, for petitioners.

Robert L. Ketchand, Jennifer G. Black, Constance O'Doherty Barnes, Boyer & Ketchand, P.C., David Walter Eckman, Law Offices of David W. Eckman, Houston, for respondents.

P.M. Schenkkan, Graves Dougherty Hearon & Moody, P.C., Austin, Amicus Curiae for Texans for Lawsuit Reform.

Justice JOHNSON delivered the opinion of the Court.

We address two issues in this appeal from a suit for breach of a bailment agreement. The first is when the statute of limitations begins to run for breach of the agreement. The second is whether the case must be remanded for a new trial as to attorney's fees when the amount of actual damages is reduced on appeal because of trial court error. As to the first issue we hold that the statute of limitations runs from the date the agreement is breached. As to the second we hold that, subject to harmless error analysis, a reduction in actual damages requires the case to be remanded for a new trial on attorney's fees. Determining that the trial court committed error which was not harmless as to the award of attorney's fees, we reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Background

Emzy and Ava Barker owned Brushy Creek Custom Sires, a business that boarded and provided other services for Brahman bulls. Between 1981 and 1995,

Walter Eckman owned interests in two bulls and in semen of a third that were boarded at Brushy Creek. Eckman, his co-owners, and Brushy Creek agreed that Brushy Creek would board the bulls, collect, store, and sell semen from the bulls, and then distribute the sales proceeds to Eckman and his co-owners according to their interests. As a result of disclosures in bankruptcy proceedings of a co-owner of one of the bulls, Eckman became convinced that Brushy Creek had breached its agreement as to sales, handling of proceeds from sales, and accounting for his shares of bull semen.

By a letter dated October 25, 1995, Eckman's attorney demanded that the Barkers deliver the semen owned by Eckman to a different storage facility, compensate Eckman properly for his share of prior sales and repay overcharges for storage of the semen. The Barkers delivered the semen as requested, but refused Eckman's monetary demands. Eckman and the Barkers signed a tolling agreement dated December 29, 1995 to see if Eckman's monetary claims could be resolved without litigation. Eckman was not satisfied with the accounting provided by the Barkers, however, and sued them.[1] In his suit, Eckman alleged that the Barkers breached their bailment agreement at various times through the years by (1) collecting proceeds of sales without crediting him for his share; (2) delivering semen without collecting proceeds; (3) failing to notify him of delivery or sales of semen; (4) charging storage for units of semen that should have been sold; and (5) delivering inadequate, false, and misleading accounting for storage, sale, and shipment.

The Barkers defended, in part, on the basis that Eckman's claims were barred by the four year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE §§ 16.004(a)(3), 16.051. Their motion for summary judgment urging limitations was denied, as was a motion for directed verdict during trial.

Following trial the case was submitted to the jury by three questions: (1) did the Barkers fail to comply with a bailment agreement; (2) if so, what were Eckman's damages; and (3) what were Eckman's necessary attorney's fees. The jury answered the first question "Yes," found Eckman's damages to be $111,983.58, and found Eckman's attorney's fees for preparation and trial to be $222,000 with additional fees of $22,500 for appeal.

The Barkers moved for judgment notwithstanding the verdict on the basis that any of Eckman's damages based on events that took place more than four years before the tolling agreement were barred by the four-year statute of limitations. The trial court denied the motion for JNOV as well as the Barkers' motion for new trial, and the Barkers appealed.

The court of appeals held that Eckman's cause of action for each of the Barkers' separate breaches of the agreement accrued at the time of each breach. Thus the court of appeals held that damages for breaches such as failure to sell semen, failure to pay Eckman's share of proceeds to him, and excessive charges for storage of semen were barred if those actions took place more than four years before execution of the tolling agreement. The appeals court held that all but $16,180.14 of Eckman's damages were barred by limitations and reduced the compensatory damages

---

1. Eckman sued both individually and as nominee and trustee of a family trust. Trust beneficiaries Larry Eckman and Eckman, Inc. were also plaintiffs. For ease of reference, we refer to the plaintiffs collectively as "Eck-

man." Emzy and Ava Barker were both named as defendants, as was their company, Brushy Creek Custom Sires. We refer to the defendants collectively as "the Barkers."

accordingly. The attorney's fees award was not reduced. 213 S.W.3d 360, 2004 WL 163462.

Eckman and the Barkers filed petitions for review. Eckman complains that the court of appeals erred in reducing his damages on the basis of limitations because the cause of action for all his damages accrued at the time of his demand in October 1995. The Barkers urge that the court of appeals erred in affirming the award of attorney's fees to Eckman in light of the reduction in Eckman's damages.

## II. Eckman's Petition—Statute of Limitations

In contending that the court of appeals erred by reducing his damages based on limitations, Eckman first asserts that the Barkers failed to preserve error on the issue. He then makes two arguments on the merits. By his first argument on the merits he asserts that the cause of action for breach of a bailment agreement does not accrue until a bailor makes demand or receives actual notice of a breach. By his second argument he urges that there was some evidence that the statute of limitations did not begin running immediately as to each individual breach as each breach occurred through the years because he did not receive notice of the breaches and because Eckman did not discover and could not, with reasonable diligence, have discovered the breaches. We conclude that the court of appeals correctly held that damages for breaches which took place more than four years before Eckman filed suit were barred by the statute of limitations and that it correctly reduced Eckman's damages accordingly.

### A. Preservation of Error

■ Eckman asserts that the Barkers waived their limitations issue by failing to request findings of fact and conclusions of law with respect to the trial court's ruling on their limitations defense. But, fact findings are not necessary when the matters in question are not disputed. *See Sullivan v. Barnett,* 471 S.W.2d 39, 44 (Tex.1971) (holding that submission of an issue on an undisputed fact is unnecessary).

Eckman's expert witnesses and trial exhibits identified specific dates and actions by the Barkers which Eckman contended were breaches of the bailment agreement. The Barkers made a motion for directed verdict based on limitations. Counsel for the parties and the trial court specifically discussed the limitations question prior to submission of the case to the jury. Eckman's counsel agreed with the trial court's stated understanding that the dates of the alleged breaches through the years were not disputed and that the trial court could decide the limitations question as a matter of law.

The Barkers were not required to obtain fact findings on the limitations issue to preserve error because the dates of the alleged breaches were not disputed.

### B. Breach of the Bailment Agreement

■ Claims for breaches of bailment agreements generally can be brought as contract or tort claims depending on the particular facts of the case and the type of action the plaintiff chooses to assert. *See Presley v. Cooper,* 155 Tex. 168, 284 S.W.2d 138, 140–41 (1955) (noting that suit was brought for conversion when bailed property was sold in violation of terms of the contract of bailment); *Elder, Dempster & Co. v. St. Louis Sw. Ry. Co.,* 105 Tex. 628, 154 S.W. 975, 987–88 (1913) (looking at the plaintiff's pleadings to determine whether a claim for breach of bailment agreement sounded in tort or contract). Eckman pleaded, tried, and submitted his case to the jury as a breach of contract

case. His claims and proof of damages were for specified actions taken or omitted by the Barkers through the years. Eckman's briefing affirms that the cause of action he asserted was for breach of a bailment agreement.

■ Eckman acknowledges the general rule that a breach of contract action accrues immediately upon breach. *See Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex.2002) ("It is well-settled law that a breach of contract claim accrues when the contract is breached."). He contends, however, that the cause of action for breach of a bailment agreement does not accrue until (1) the bailor makes demand upon the bailee; or (2) if demand is nonexistent or ineffective, then when the bailor receives actual notice of conduct by the bailee which is inconsistent with the bailor's rights.

■ We agree with Eckman that a cause of action for breach of a bailment agreement can accrue when the agreement is breached by the bailee's refusal to comply with the bailor's rightful demand for return or disposition of the bailed property, or when the bailee takes action clearly inconsistent with the bailor's contractual rights. But, the rule that a cause of action may accrue upon such types of breach does not preclude accrual of a cause of action at an earlier time if the bailee at an earlier time breaches the agreement. The rights and obligations of the parties to a bailment agreement must be analyzed in light of the particular facts and the claims asserted. This Court has consistently held that a cause of action accrues when a party has been injured by actions or omissions of another. *See Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex.1990) ("[A] cause of action can generally be said to accrue when the wrongful act effects an injury."). Limitations begins to run upon accrual of the cause of action. *See Johnson & Higgins of Tex., Inc. v. Kenneco*

*Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998); *Port Arthur Rice Milling Co. v. Beaumont Rice Mills*, 105 Tex. 514, 143 S.W. 926, 928 (1912) (" 'The accrual of the cause of action' means the right to institute and maintain a suit; and whenever one person may sue another a cause of action has accrued and the statute begins to run."). We do not see that bailment contracts differ from contracts in general to the extent that the rule as to when a party has the right to sue for breach of an agreement should be altered for them. Accordingly, we hold that a cause of action accrues when a bailment agreement is breached. The non-breaching party has the right to sue at the time the agreement is breached and limitations begins to run at that time.

■ Eckman does not claim that the Barkers breached their agreement to return his property on demand or to transfer it when he directed them to do so. He claims numerous individual breaches through the years. We agree with the court of appeals that his claims for those serial breaches accrued as soon as he had the right to sue on them individually, that is, immediately upon the occurrence of each breach.

## C. Discovery Rule

Finally, Eckman contends that no portion of his claim is barred by limitations because of the discovery rule. He argues that evidence in the record shows he did not receive notice of the Barkers' breaches and that he did not discover and could not, with reasonable diligence, have discovered the breaches until he sent his demand letter in 1995.

■ As noted above, a cause of action for breach of contract accrues upon breach. In some types of cases, the discovery rule may defer accrual of a cause of

action until the plaintiff knew or, by exercising reasonable diligence, should have known of the facts giving rise to a cause of action. *HECI Exploration Co. v. Neel,* 982 S.W.2d 881, 886 (Tex.1998). In order for the discovery rule to apply, the nature of the injury must be inherently undiscoverable and the injury itself must be objectively verifiable. *Id.* The discovery rule is an independent ground of defense. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 518 (Tex.1988).

■ The Barkers do not assert that the discovery rule could not apply to Eckman's claim. Instead, they argue only that Eckman has waived any right to rely on the discovery rule by failing to obtain a jury finding to support his discovery-rule defense.

■ A party seeking to benefit from the discovery rule has the burden of obtaining findings to support its application. *Woods,* 769 S.W.2d at 518. Although Eckman pleaded the discovery rule and points to evidence to support his position, he did not request a jury question on the issue and did not object to omission of such a question from the charge. Addressing the lack of a jury finding, Eckman asserts that none was necessary because the trial court could have determined that the discovery rule applied as a matter of law under the state of the pleadings and the record. But, exactly when Eckman should have known of the facts giving rise to the individual breaches by the Barkers was disputed. The trial court was precluded from applying the discovery rule to delay accrual of Eckman's causes of action absent jury findings because the evidence was not conclusive as to those matters. *See Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex.1998).

## III. The Barkers' Petition—Eckman's Attorney's Fees

Even though the court of appeals' ruling on the statute of limitations reduced the amount of damages awarded to Eckman, the court declined to remand the case for the trial court to reconsider the amount awarded to Eckman as attorney's fees. First, it held that the Barkers waived any complaint as to the attorney's fees jury question because they did not object to the question on the basis that it asked the jury to consider the results obtained, nor did they tender a question asking the jury to segregate Eckman's attorney's fees for various services rendered. 213 S.W.3d 360, 2004 WL 163462. The court of appeals reviewed the factual sufficiency of the attorney's fees evidence in light of the jury's original finding of $111,983.58 and concluded that the evidence was factually sufficient to support the award.

## A. Waiver of Error

■ The Barkers assert that they preserved error. They argue that they were not required to object to the charge and submit proposed instructions or questions because they are not complaining that the trial court submitted an erroneous jury charge. Rather, they point out, their complaint in the court of appeals was as to the factual sufficiency of the evidence of attorney's fees and their motion for new trial preserved such error by challenging the factual sufficiency of the evidence. *See* Tex.R. Civ. P. 324(b)(2). In addition, the Barkers argue that matters they raise in their petition for review may be presented in this Court because the matters first arose from the court of appeals' decision. *See Bunton v. Bentley,* 153 S.W.3d 50, 53 (Tex.2004). The first such matter is that the court of appeals used an improper standard in reviewing the attorney's fee award in that the court did not conduct a meaningful review of the evidence as to each of the factors set out in *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945

S.W.2d 812, 818 (Tex.1997). A second is that the appeals court reduced the amount of Eckman's compensatory damages, yet reviewed the factual sufficiency of the evidence as to attorney's fees by considering the original findings of the jury instead of the reduced award. Another is that the court of appeals' reduction of Eckman's compensatory damages resulted in the jury having considered wrong "results obtained" in finding the amount of Eckman's attorney's fees.

We agree that the Barkers' actions have preserved error for the challenges they present to the attorney's fees award. *See* TEX. R. CIV. P. 324(b)(2); *Bunton,* 153 S.W.3d at 53.

### B. The Jury's Consideration of "Results Obtained"

Because we find it dispositive of the appeal, we first consider whether the Barkers are entitled to have the case remanded for a new trial on Eckman's attorney's fees in light of the reduction of Eckman's compensatory damages. The jury was instructed that factors to be considered in determining a reasonable attorney's fee included:

(a) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(b) the fee customarily charged in the locality for similar legal services;

(c) the amount of money involved in the case and the results obtained;

(d) the experience, reputation, and ability of the lawyers performing the services;

(e) whether the fee is fixed or contingent on results obtained;

(f) the time limitations imposed by the client or the circumstances;

(g) the nature and length of the professional relationship with the client.

There was no objection to the jury charge, so we review the Barkers' complaints according to the charge as submitted. *See Wal–Mart Stores, Inc. v. Sturges,* 52 S.W.3d 711, 715 (Tex.2001).

Eckman claimed that the Barkers' breaches caused damages of over $113,000. The jury found that Eckman's damages were $111,983.58. The court of appeals reduced the damages award to $16,180.14. Both by their motion for new trial and by their appeal the Barkers challenged the factual sufficiency of the evidence to support the jury's finding as to attorney's fees. They are entitled to a meaningful evidentiary review of the jury's determination. *See Saenz v. Fidelity & Guar. Ins. Underwriters,* 925 S.W.2d 607, 614 (Tex.1996). But, the court of appeals could only review the sufficiency of the evidence to support the original jury finding because in conducting a factual sufficiency review of the evidence an appellate court is to review the evidence according to the jury charge given and the jury findings in response to that charge. *See Sage St. Assocs. v. Northdale Constr. Co.,* 863 S.W.2d 438, 447 (Tex.1993) (stating that a court of appeals is to employ the measure of damages submitted to the jury in reviewing the sufficiency of the evidence to support the damage award). In conducting such review, the appellate court presumes that the jury acted in accordance with the trial court's instructions. *See Daugherty v. S. Pac. Transp. Co.,* 772 S.W.2d 81, 83 (Tex.1989).

A review of the original jury finding as to attorney's fees could not afford the Barkers the factual sufficiency review to which they were entitled—a factual sufficiency review of a jury finding made in consideration of the correct damages amount. Under such circumstances the

error is reversible unless the appellate court is reasonably certain that the jury was not significantly influenced by the erroneous amount of damages it considered. *See Romero v. KPH Consol., Inc.,* 166 S.W.3d 212, 227–28 (Tex.2005).

Eckman argues that factually sufficient evidence supports the attorney's fees award even when considering the reduced damages amount. Among other matters, he references pre-litigation efforts to resolve the disputes and extensive discovery made necessary by what he describes as poor record keeping and abusive litigation tactics by the Barkers. But, even if it is assumed that the evidence supporting the attorney's fees finding is factually sufficient when considering the correct "results obtained" and that the jury could have made the same finding as to attorney's fees if properly instructed, the fact remains that the Barkers are effectively foreclosed from complaining on appeal that they would not have done so. *See id.* at 226.

Not every appellate adjustment to the damages which a jury considered as "results obtained" when making attorney's fees findings will require reversal. In this case, however, considering both the absolute value of the difference between the erroneous and correct amounts of damages, and the fact that the correct damages were one-seventh of the erroneous damages, we are not reasonably certain that the jury was not significantly affected by the error. Accordingly, the trial court's error was harmful. That part of the judgment awarding attorney's fees to Eckman must be reversed. *See* TEX. R. APP. P. 44.1(a)(2); 61.1(b).

## C. Remedy

■■■■ It is suggested that we remand the case to the court of appeals with instructions that the court perform a factual sufficiency review based on the correct damages amount. We decline to do so. If we were to accept the suggestion, we would be directing the court of appeals to perform its factual sufficiency review by both disregarding the damages finding the jury had before it to consider, and using a damages amount the jury had no indication it was to use. Such a process would effectively require the court of appeals to substitute its judgment for that of the jury as to how much weight to give the "results obtained" factor and how to balance that factor in conjunction with the evidence of each of the other factors the jury was instructed to consider. As we have previously noted, an appellate court's review of a jury finding for factual sufficiency of the evidence is to be based on the charge given and the jury's finding in response to that charge. *See Sage St. Assocs.,* 863 S.W.2d at 447. In conducting its factual sufficiency review an appellate court is not to substitute its judgment for that of the jury. *Golden Eagle Archery, Inc. v. Jackson,* 116 S.W.3d 757, 761 (Tex.2003). We decline to impose the remedy suggested.

It is also suggested that we remand the case to the court of appeals and direct the court of appeals to use a "presumptive proportionality" construct for suggesting a remittitur of attorney's fees. The construct proposed would begin with the presumption that an attorney's fees award is to be reduced in proportion to any reduction in the award of actual damages. The court of appeals would be required to examine and detail the record evidence as to each factor the jury was instructed to consider in setting attorney's fees. The court of appeals would then analyze the evidence on a factor-by-factor basis and determine whether the evidence as to any factor warrants either a more-than-proportionate or less-than-proportionate reduction in the attorney's fee award. Such an approach,

however, would require us to impose a presumption that the jury awarded attorney's fees on some proportionality basis to actual damages. The jury was not instructed to consider such methodology in making its finding, we see no indication that the jury did so, and we decline to impose such a remedy for the error before us. *See Tatum v. Preston Carter Co.,* 702 S.W.2d 186, 188 (Tex.1986) (holding that court of appeals erred in proportionally reducing exemplary damages in the exact ratio as the actual damages were reduced).

## IV. Conclusion

For the reasons noted, we conclude that the case must be remanded to the trial court for a new trial as to attorney's fees. *See Wayland v. City of Arlington,* 711 S.W.2d 232, 233 (Tex.1986). We affirm that part of the court of appeals' judgment reducing the trial court's compensatory damage award to $16,180.14. We reverse the part of the court of appeals' judgment which affirmed the trial court's judgment as to attorney's fees and remand that part of the case to the trial court for further proceedings consistent with this opinion.